IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALLEN R. NEGRI, by assignment
from Paul D. Dotson, Jr.,
LORRAINE NEGRI, by assignment
from Paul D. Dotson, Jr. and
PAUL D. DOTSON, JR., individually,

      Plaintiffs,

v.                                Civil Action No. 5:11CV3
                                        (STAMP)

NATIONWIDE MUTUAL INSURANCE COMPANY,
and NANCY L. KOWALSKI INSURANCE
AND FINANCIAL SERVICES,

      Defendants.


MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT NATIONWIDE MUTUAL
INSURANCE COMPANY'S FIRST MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S SECOND MOTION FOR
SUMMARY JUDGMENT DUE TO NON-ASSIGNABILITY CLAUSE

I.   Procedural History

The plaintiffs filed this civil action in the Circuit Court of Hancock County, West Virginia against the above-named defendants alleging violations of the West Virginia Unfair Trade Practices Act ("UTPA"), statutory and common law bad faith, breach of contract, breach of fiduciary duty, tort of outrage, negligence, and civil conspiracy. The defendants then filed a notice of removal in this Court based upon diversity jurisdiction. The defendants filed a motion to dismiss all claims against defendant Nancy L. Kowalski Insurance and Financial Services ("Kowalski Insurance") and to dismiss the civil conspiracy claim against defendant Nationwide

Mutual Insurance Company ("Nationwide"), both of which this Court granted. The only remaining defendant, Nationwide, also filed two motions for summary judgment. The first motion argues that this action must be dismissed because Nationwide validly cancelled the auto policy of its insured (Mr. Dotson), the tortfeasor in this case, prior to the accident that is the subject of the claims made of this action. The second motion for summary judgment is based upon Nationwide's argument that a non-assignability clause contained in Mr. Dotson's policy precludes him from assigning the claims asserted in this litigation, thus precluding the Negris from recovering under rights obtained pursuant to the assignment they received from Mr. Dotson.

Both of these motions have been fully briefed by the parties and are ripe for disposition. Following review of both parties' contentions and the relevant law, for the reasons herein, this Court finds that the defendant's first motion for summary judgment based upon the cancellation of Mr. Dotson's policy, is premature and must be denied. Further, finding that, as a matter of law, the non-assignability clause in Mr. Dotson's policy is unenforceable in this context, the defendant's second motion for summary judgment relating to the non-assignability clause must also be denied.

## II. <u>Facts</u>

On February 26, 2010, plaintiff Paul D. Dotson, Jr. was driving a van which struck a sport utility vehicle head-on ("the

2

accident"). Allen Negri was a front seat passenger in the sport utility vehicle. Allen Negri allegedly sustained a broken femur, concussion, low grade coma, broken nose, broken ribs, bruised shoulder, injured hips, and multiple bruises, cuts and scrapes. The Negris made a claim for insurance benefits pursuant to Dotson's insurance policy issued by Nationwide. Nationwide notified the Negris that no insurance coverage was available because Dotson's policy had been cancelled prior to the collision. Dotson states he was unaware that his policy had been cancelled and states that he was not notified by Nationwide of the cancellation. On June 25, 2010, the Negris filed suit against Dotson in the Circuit Court of Brooke County, West Virginia. Nationwide refused to provide Dotson with a defense, and Dotson allowed default to be entered against him. The Court then awarded damages against Dotson in the amount of $6,389,320.69 plus interest and costs. On September 27, 2010, the Court entered the final judgment order. After the final judgment order, Dotson assigned his first party rights and a portion of his right to any first party damages to Allen and Lorraine Negri.

## III.  Applicable Law

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense -- or part of each claim or defense -- on which summary judgment is sought" and that such a motion should be granted "if

the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Federal Rule of Civil Procedure 56(c),

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). After this initial burden is satisfied, "[t]he burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

4

favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Rule 56(b) also provides that summary judgment may be filed "at any time until 30 days after the close of all discovery." Notwithstanding, courts have found that summary judgment is generally not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). Whenever "the nonmoving party has not had the opportunity

5

to discover information that is essential to his opposition," summary judgment should be denied.  <u>Anderson</u>, 477 U.S. at 250. Rule 56(d) provides that, in such a situation, when facts essential to justify a nonmovant's position cannot be presented, a nonmovant may show the reason "by affidavit or declaration," and the Court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order."   In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

IV.   <u>Discussion</u>

A.   <u>First Motion for Summary Judgment</u>

In its first motion for summary judgment, Nationwide calls for summary judgment based upon the argument that no insurance coverage existed for Mr. Dotson at the time of the accident because Nationwide had cancelled his policy due to non-payment effective January 12, 2010, about a month prior to the accident.  It argues that, under the language of the Mr. Dotson's insurance contract, as well as the law of West Virginia, it validly cancelled Mr. Dotson's policy prior to the accident, so the contractual relationship between Nationwide and Mr. Dotson that is the predicate for this action did not exist.

6

The plaintiffs argue that discovery is necessary in order to ascertain further evidence regarding Nationwide's argument. They maintain, and attach an affidavit averring the same, that Mr. Dotson believed that he had brought his policy current when he added his son's car to his insurance policy on December 2, 2009, two days before Nationwide allegedly sent the cancellation notice. They argue that discovery is necessary to determine whether this is true. Additionally, they claim that discovery may reveal that the Dotson's insurance agent was negligent in bookkeeping, and thus possibly failed to report that Mr. Dotson had brought his account current on December 2, 2009.

Further, the plaintiffs argue that discovery is necessary to determine whether past dealings between Mr. Dotson and Nationwide were such that a pattern and practice of "doing business" may have been established as to lead Mr. Dotson to detrimentally rely upon a reasonable understanding that he was permitted to allow his policy to fall behind for several months then bring it current with a lump-sum payment. The plaintiffs also attach an affidavit of plaintiffs' counsel, pursuant to Federal Rule of Civil Procedure 56(d), explaining that insufficient information has been exchanged for the plaintiffs to adequately support their opposition to the motion for summary judgment, because discovery had only just begun when the motion for summary judgment was filed.

Nationwide counters the plaintiffs' request for further discovery by arguing that the plaintiffs' opposition to its motion lack support. It also reiterates its position that the cancellation notice sent to Mr. Dotson and the subsequent cancellation of the policy were procedurally valid. However, whether or not the process of cancellation and notice given of it were legally sound, if the basis for the cancellation was fallacious, procedural validity is a moot issue.

On this point, Nationwide's counter-arguments to the plaintiffs' request for further discovery in order to discern whether Mr. Dotson actually brought his account current prior to the cancellation, are unconvincing at this juncture, and actually support the plaintiffs' contentions. Nationwide again summarizes its payment records of Mr. Dotson's policy, showing no payment on December 2, 2009, and argues that plaintiffs' position that Mr. Dotson may have paid his premium on December 2 is inconsistent and without merit because the plaintiffs say that Dotson "likely" made the payment, while also making arguments that Mr. Dotson had a "reasonable expectation" that he would be able to pay his premiums later.

However, the plaintiffs' use of broad, unspecific language, as well as plaintiffs' failure to make a specific assertion that a payment was made, is directly illustrative of the fact that the plaintiffs have not had an opportunity to engage in discovery on

this matter.  The plaintiffs attached an affidavit of Mr. Dotson, that states that he remembers paying his new premium on December 2, 2009.  They also make the logical argument that it is more believable that Nationwide would only allow Mr. Dotson to add a car to his policy if he brought his account current.  Beyond this, the plaintiffs have no further evidence of the payment, because such evidence would be obtained or revealed as nonexistent during discovery.  Thus, the plaintiffs' lack of support for their contention that Mr. Dotson paid his premium is, in fact, support for their argument that this motion cannot be ruled upon until a time following the completion of discovery.

Further, the defendant's multiple offerings of its payment records for Mr. Dotson's account do not prove that no payment was made.  The plaintiffs make the argument that they believe that discovery will reveal that Mr. Dotson's Nationwide agent, a former defendant in this case, Kowalski Insurance, kept poor records, and thus record of payment may have never been transmitted to Nationwide to be reported on its payment records.  If Mr. Dotson did indeed bring his account current at the office of Kowalski Insurance on December 2, 2009 and notice of the same was not transmitted to Nationwide, Nationwide, as principle of its agent Kowalski Insurance, will be charged to have received payment and the cancellation will be invalid.  Moore v. United Benefit Life Ins. Co., 145 W. Va. 549, 563-64 (1960) (Insurer bound by

9

statements and actions of its agent.  Insured "is not called upon to make examination to ascertain whether the agent of the insurance company has faithfully discharged his duty.").  While plaintiffs' proffered evidence of poor record-keeping is unconnected and not at this stage persuasive to show that the record-keeping of any transaction on December 2, 2009 was deficient, it is again, support for the contention that discovery is necessary.

Finally, Nationwide argues that the plaintiffs' inconsistent factual positions that Mr. Dotson paid his premium on December 2, 2009 while at the same time, arguing that the prior dealings with Nationwide gave Mr. Dotson a reasonable expectation that he was permitted to allow his policy to fall behind then to bring it current with a lump-sum payment, are improper under West Virginia law.  The West Virginia case law cited by Nationwide states that "successive inconsistent positions . . . in reference to the same fact or state of facts" may not be maintained.  Syl. pt. 3 <u>Haba v. Big Arm Bar & Grill, Inc.</u>, 196 W. Va. 129, 131 (1996).  However, the plaintiffs here do not take inconsistent positions in reference to the same set of facts.  The plaintiffs have not been able to ascertain the facts, so they have taken two different positions based upon two separate possible states of the facts that may be revealed in discovery.  The practice of stating alternative positions in order to retain all possible arguments before factual discovery has revealed whether certain positions may be unsupported

10

is a quite common and acceptable practice that is in fact endorsed by the Federal Rules of Civil Procedure 8(d).

> (2) **Alternative Statements of a Claim or Defense.**  A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if an one of them is sufficient.

> (3) **Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

This Court finds that the plaintiffs have satisfactorily shown that they are unable to support an opposition to the first motion for summary judgment because they have not been afforded adequate time to conduct discovery.  As such, summary judgment at this stage would be inappropriate.  See <u>Oksanen v. Page Memorial Hosp.</u>, 912 F.2d at 78.  Accordingly, the defendant's first motion for summary judgment is denied as premature pursuant to Federal Rule of Civil Procedure 56(d)(1).

B.   <u>Second Motion for Summary Judgment</u>

Conversely, the second motion for summary judgment involves purely legal questions which can be determined by this Court at any time without any factual determinations, and thus may be decided prior to the conclusion of discovery.   In the second motion, Nationwide argues that the non-assignability clause contained in Mr. Dotson's policy voids the assignment of rights to this cause of action that has given the Negris standing to bring this case.  As a result, Nationwide contends, this case should be dismissed as to

11

those plaintiffs.   In response, the plaintiffs argue that assignments such as these are perfectly valid, and a finding otherwise would be against public policy.

In <u>Smith v. Buege</u>, 182 W. Va. 204 (1989), the West Virginia Supreme Court held that, in the context of post-loss assignment of a fire insurance policy, all otherwise valid assignments will be valid regardless of the existence of a non-assignability clause within the policy.  <u>Id.</u> at 211.  The court distinguishes post-loss assignments from pre-loss assignments, which will not be valid when a non-assignment clause exists, by rationalizing that:

> the recognized reason for the prohibition of assignments without the consent of the insurer, specifically, to protect the insurer against an increased risk resulting from the assignment, is not applicable after a loss because the liability of the insurer was already fixed by the loss prior to the effective date of the assignment, and like any other chose in action such liability is assignable regardless of the conditions of the policy in question.

<u>Id.</u>

This holding in <u>Smith</u> was reached in the context of a fire insurance policy, and the West Virginia Supreme Court has not had occasion to expressly apply it to the context of automobile liability insurance.  Nationwide contends that this fact distinguishes the case from the instant action and, had the West Virginia Supreme Court of Appeals intended to make the <u>Smith</u> rule applicable to all types of insurance, it would have done so.

However, this argument is not dispositive of a finding that

<u>Smith</u> applies in this context, as the court did not have occasion based upon the facts before it in <u>Smith</u> to make such a sweeping ruling, and a failure to do so does not necessarily indicate an opposite intention.  Further, Nationwide's reliance on the distinction that <u>Smith</u> dealt with fire insurance is puzzling, given that neither of the cases heavily cited by Nationwide to support its argument that the clause is enforceable deal with automobile insurance.  <u>Williams v. Mayflower Ins. Co.</u>, 238 Ga. App. 581 (1999), dealt with a homeowner's policy (functionally, a fire policy), and <u>Conoco, Inc. v. Republic Insurance Co.</u>, 819 F.2d 120 (5th Cir. 1987), dealt with a marine insurance policy.  Still, Nationwide saw no difficulty in extending the holdings of these cases to the instant situation.

Further, the holding and rationale in <u>Smith</u> is broadly applicable to all types of insurance, and it seems to this Court to be highly indicative of the way in which the West Virginia Supreme Court of Appeals would rule if faced with the opportunity to extend the <u>Smith</u> rule to this context.  The bases for the court's holding are founded in the argument that enforcement of non-assignability clauses post-loss is "contrary to public policy" because the rationale of protecting insurance companies from increased risk of loss is no longer applicable, as the risk is fixed by the loss that has already occurred.  <u>Id.</u> Restriction on post-loss assignment is further described in multiple authorities as being "inconsistent

with the covenant of indemnity or the right to assign a claim for money due," as well as having support in the idea that "the loss obviously creates new rights and obligations that . . . alters the prohibition of the assignment." 43 Am. Jur. 2d Insurance § 787; Steven Plitt et al., Couch on Insurance § 35.8 (3d ed. 2005). This reasoning is deeply rooted in West Virginia law as well as a the majority[1] of other jurisdictions, and unquestionably applies to automobile liability insurance. See Syl. pt. 4 Nease v. [Aetna] Insurance Co., 32 W. Va. 283 (1889); Stolle v. Aetna Fire & Marine Insurance Co., 10 W. Va. 546 (1887); Antal's Restaurant, Inc. v. Lumbermen's Mutual Casualty Co., 680 A.2d 1386, 1388-89 (D.C. 1996); Pacific Coast Casualty Co. v. General Bonding & Casualty Ins. Co., 240 F. 36 (9th Cir. 1917); Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13 (1931). Further, Couch refers to the rule as specifically applicable to liability insurance. Id. Accordingly, this Court finds that the rule that post-loss assignments are valid notwithstanding any contrary terms of the policy, extends to automobile insurance.

The defendant further attempts to distinguish Smith from the instant case by arguing that the West Virginia Supreme Court of

---

[1] See Steven Plitt et al., Couch on Insurance § 35.8 (3d ed. 2005) (listing Georgia as the only jurisdiction to hold otherwise). This Court notes that Nationwide's reliance upon Williams v. Mayflower Ins. Co., 238 Ga. App. 581 (1999), is misguided because Georgia statutory law expressly requires enforcement of non-assignability clauses in insurance policies. See Ga. Code Ann. § 33-24-17.

14

Appeals did not address the enforceability of non-assignment
clauses in the context of loss based upon personal injury.
However, while this contention on the part of defendant Nationwide
is true, the demarcation between insurance claims based upon
"personal injury" and claims based upon "property loss" is a false
one in this context.  Claims based upon the personal injury of an
insured are not assignable, because all assignments must be to a
"property right," but in this case, the assignee is the one with
any claim for personal injury.  See Jennings v. Farmer's Mut. Ins.
Co., 224 W. Va. 636, 641 (2009).  The right that was assigned was
not one to funds for personal injury, but a right to a legal cause
of action for insurance proceeds based upon liability coverage.
See Steven Plitt et al., Couch on Insurance § 34.2 (3d ed. 2005)
("As a general proposition, the loss creates a right to payment of
a sum of money.").  The assignor did not assign any claim for his
own personal injury.  Rather, he assigned his alleged contractual
right to indemnification for the monetary judgment entered against
him by the Circuit Court of Brooke County, West Virginia.  Such an
assignment is a property right and is only tangentially connected
to personal injury.

Finally, Nationwide argues that Smith does not address "bad
faith refusal to provide insurance coverage," but rather the
assignment of insurance proceeds.  This distinction, too is without
merit.  In Smith, the court describes assignable rights after loss

15

quite broadly, endorsing the assignment "of a claim or right of action on the policy." 182 W. Va. at 116. Further, <u>Couch</u> refers to "a claim <u>arising under</u> the policy" as assignable. § 35.8 (emphasis added). A bad faith claim most certainly arises under the policy, and Nationwide has argued a similar position in this very action. In fact, courts that have found even post-loss assignment of policy rights to be non-assignable when a non-assignment clause exists, have found that bad faith, or "when an insurer breaches a duty to an insured, and the assignment is of a cause of action to recover damages for that breach" to be a specific exception to non-assignability. <u>Henkel Corp. v. Hartford Accident and Indemnity Co.</u>, 29 Cal. 4th 934 (2003).

As a final matter, it contravenes common sense to reach a conclusion that bad faith claims are not assignable in the face of a non-assignment clause. Such a finding would, in effect, reward insurance companies for breaching duties to their insured by allowing the enforcement of policy provisions that otherwise would not be enforceable post-loss. This Court declines to make such a counterintuitive finding based simply upon the application of the <u>Smith</u> precedent.

As such, this Court finds that the West Virginia Supreme Court's holding in <u>Smith</u> applies to the instant situation, and the non-assignment clause within Mr. Dotson's policy is ineffective in invalidating the otherwise valid assignment which gives the Negris

standing to bring this case. Defendant Nationwide's second motion for summary judgment is thus denied.

V.   <u>Conclusion</u>

For the reasons stated above, the defendant's first motion to for summary judgment (ECF No. 16) is DENIED WITHOUT PREJUDICE as premature, and the defendant's second motion for summary judgment (ECF No. 18) is DENIED WITH PREJUDICE.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    October 24, 2011


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE